IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAYDEI G. BARLEE, et al.         :      CIVIL ACTION
                                 :
         v.                      :
                                 :
FIRST HORIZON NATIONAL           :
CORPORATION, et al.              :      NO. 12-3045

                           MEMORANDUM

Bartle, J.                                      February 27, 2013

        Plaintiffs Saydei G. Barlee ("Barlee") and Barry D. Broome ("Broome") have filed a first amended putative class-action complaint asserting violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA") and common law unjust enrichment claims against defendants First Horizon National Corporation ("FHNC"), First Tennessee Bank, N.A. ("First Tennessee Bank"), First Horizon Home Loan Corporation ("First Horizon Home Loan"),[1] FT Reinsurance Company ("FT Reinsurance"), United Guaranty Residential Insurance Company ("United Guaranty"), Genworth Mortgage Insurance Corporation ("Genworth"), Republic Mortgage Insurance Company ("Republic"), and Radian Guaranty Inc. ("Radian").

---

1. Until February 7, 2007, defendant First Horizon Home Loan was a wholly-owned subsidiary of defendant First Tennessee Bank, which was a wholly-owned subsidiary of defendant First Horizon National Corporation. On that date, they merged with First Tennessee Bank emerging as the surviving corporation. For the purpose of the present motions before the court, we will refer to First Horizon National Corporation, First Horizon Home Loan, and First Tennessee Bank together as "First Horizon."

Three motions to dismiss are before the court. One, filed by United Guaranty, contends that the first amended putative class-action complaint fails to state a claim under which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure since the plaintiffs' RESPA claims are time-barred, and the unjust enrichment claim provides no basis for recovery. Another was filed by First Horizon and FT Reinsurance and makes similar arguments. A third motion to dismiss was filed by Genworth, Republic, and Radian under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. These defendants maintain that the plaintiffs lack standing to bring claims against them, that there can be no secondary liability under RESPA, that the plaintiffs' RESPA claims are time-barred, and that the unjust enrichment claim provides no basis for recovery.

I.

When reviewing a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), the court accepts the plaintiff's allegations as correct and draws inferences in the plaintiff's favor. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge to subject-matter jurisdiction is one in which a defendant argues that "the allegations on the face of the complaint, taken as true," are insufficient to invoke the court's jurisdiction. Turicentro, 303 F.3d at 300.

Similarly, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. On a motion to dismiss, a court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)).

II.

The following facts are undisputed or taken in the light most favorable to the plaintiff. Barlee obtained a mortgage loan from First Horizon on or about April 30, 2007 for

the purchase of her home located in Philadelphia, Pennsylvania. In connection with this loan, Barlee was required to pay for private mortgage insurance in the amount of $226.42 each month. Her private mortgage insurer was PMI Mortgage Insurance Company ("PMI"), which is not a party in this action.[2] PMI was selected by First Horizon to be Barlee's insurer.

Broome obtained a mortgage loan from First Horizon on or about April 10, 2008 for the purchase of his home located in Atlanta, Georgia. Broome was required to pay $55.19 per month for private mortgage insurance in connection with this loan. First Horizon selected his insurer, United Guaranty.

Borrowers generally do not have the opportunity to comparison-shop for private mortgage insurance since it is arranged by the lender. Plaintiffs allege that the defendants effectuated a "captive reinsurance scheme" whereby illegal referral payments in the form of purported reinsurance premiums were paid by mortgage insurers to a reinsurer, FT Reinsurance, which was a wholly-owned subsidiary of the mortgage lender, First Horizon. Plaintiffs aver that this scheme violated §§ 2607(a) and 2607(b) of RESPA, which provide:

> (a) Business referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a

---

2. Plaintiffs did not sue PMI, which filed for Chapter 11 bankruptcy protection on November 23, 2011.

>           federally related mortgage loan shall be
>           referred to any person.
>           (b) Splitting charges.  No person shall give
>           and no person shall accept any portion,
>           split, or percentage of any charge made or
>           received for the rendering of a real estate
>           settlement service in connection with a
>           transaction involving a federally related
>           mortgage loan other than for services
>           actually performed.

12 U.S.C. §§ 2607(a) and 2607(b) .

Plaintiffs allege that this type of arrangement was widespread through the mortgage lending industry and that it amounted to coercing mortgage insurers into cutting lenders in on lucrative premiums in exchange for assuming little or no risk. Although plaintiffs' mortgage insurers were PMI, a nonparty, and United Guaranty, respectively, plaintiffs have also sued other mortgage insurers -- Genworth, Republic, and Radian -- whom they allege were part of the same captive reinsurance scheme with FT Reinsurance and First Horizon. Plaintiffs allege that all the defendants "act[ed] in concert and actively participat[ed] in this scheme." They plead that First Horizon entered into virtually identical contracts with all the defendant mortgage insurers.

### III.

We will first address the argument made by Genworth, Republic, and Radian under Rule 12(b)(1) alleging that the plaintiffs do not have standing to sue them. It is well settled that the "irreducible constitutional minimum of standing" requires that: (1) the plaintiff has suffered an "injury in

fact;" (2) a causal connection exists between the injury and the conduct complained of; and (3) it is likely that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1991). Genworth, Republic, and Radian argue that no causal connection exists between their conduct and any injury suffered by the plaintiffs. Unlike United Guaranty and PMI (a nonparty), they did not provide mortgage insurance to either plaintiff and therefore could not have directly injured them. Thus, any causation may be proven only if they participated in a scheme with the insurers who did contract with the plaintiffs.

Throughout the complaint, the plaintiffs make conclusory allegations that all the private insurers were part of one scheme. These allegations include the following:

> Defendants have engaged together in a single, coordinated scheme designed to circumvent RESPA's prohibition against kickbacks, referral payments and unearned fee splits.
> ...
> Each of the Private Mortgage Insurers participated with the understanding that the other Private Mortgage Insurers were likewise committed to carrying out the scheme's objectives...."
> ...
> The fact that not one of the Private Mortgage Insurers either refused to enter into the reinsurance arrangement with First Horizon or reported First Horizon to the appropriate authorities demonstrates their collective participation in the scheme, which caused harm to each and every member of the class regardless of their respective private mortgage insurer."
> ...
> By ... not reporting the scheme to the appropriate authorities, opting out, and or

-6-

> publicly complaining about the scheme, each
> of the Private Mortgage Insurers herein were
> full participants in the scheme alleged and
> as such their conduct is directly traceable
> to Plaintiffs' injury.

In Twombly, the Supreme Court addressed whether a complaint averred sufficient allegations of an antitrust conspiracy to survive a motion to dismiss. The Court held, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 556-57. As in Twombly, here "plaintiffs rest their ... claim[s] on descriptions of parallel conduct and not on any independent allegation of actual agreement." Id. at 564. Plaintiffs failed to plead any facts demonstrating that a scheme existed among the private mortgage insurers and therefore have no standing against those with which they did not contract.

In a similar case filed in California, the District Court likewise found that the plaintiffs failed to allege standing since they did not "allege the requisite connection" between the defendants. McCarn v. HSBC USA, Inc., No. 12-375, 2012 U.S. Dist. LEXIS 162257, at *11 (E.D. Cal. Nov. 13, 2012). That court reasoned that rather than the scheme alleged to have occurred both in that case and here, it was more rational that "an insurer here would prefer that fewer of its competitors participate in the scheme, as it would then enjoy that much more

-7-

of the [] steered business." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 332 (3d Cir. 2010). We agree. Like that court, we see no motive for the private mortgage insurers to participate together in the alleged scheme. Rather, each insurer would presumably prefer to deal alone with the lender/reinsurer. By all participating in the scheme together, each insurer loses out on some of the business. "[T]he absence of any plausible motive to engage in the conduct charged is highly relevant" to whether there is any genuine dispute as to any material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986). Accordingly, the plaintiffs have not alleged sufficient facts to establish standing against Genworth, Republic, and Radian. Because standing does not exist, we will not address the other arguments made by these defendants. We will grant the motion of Genworth, Republic, and Radian to dismiss under Rule 12(b)(1).

For these same reasons, we will grant the motion of United Guaranty as to the claims of plaintiff Barlee and otherwise deny it. United Guaranty was the private mortgage insurer of plaintiff Broome but had no relationship to plaintiff Barlee.

IV.

We will next address the argument made by the remaining defendants that plaintiffs' RESPA claims are time-barred. There is a one-year statute of limitations from the date of the occurrence of the violation under RESPA, and the plaintiffs filed

their claims more than one year following the violations.  See 12 U.S.C. § 2614.  Barlee and Broome instituted suit on May 31, 2012, which was over five years after Barlee's RESPA claim accrued upon the closing of her loan transaction on or about April 30, 2007, and over four years after Broome's RESPA claim accrued upon the closing of his loan transaction on or about April 30, 2007.

Plaintiffs counter that the RESPA statute of limitations was tolled "based on principles of equitable tolling, fraudulent concealment and/or the discovery rule."  To invoke the doctrine of equitable tolling, plaintiffs must allege the following:  "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts."  Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006).  "Because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion."  Drennan v. PNC Bank, NA, 622 F.3d 275, 301-02 (3d Cir. 2010) (citation omitted).

First Horizon and FT Reinsurance argue that equitable tolling is not available under RESPA because its statute of limitations is jurisdictional and thus absolute.  We disagree.

It is true that "[a] limitation period is not subject to equitable tolling if it is jurisdictional in nature." See, e.g., Shendock v. Director, Office of Workers' Compensation, 893 F.2d 1458, 1466-67 (3d Cir. 1990). However, our Court of Appeals held that a similar one-year statute of limitations in the Truth in Lending Act (TILA) was not jurisdictional in Ramadan v. Chase Manhattan Corp., 156 F.3d 499 (3d Cir. 1998). In that case, the court declined to apply the reasoning of Hardin v. City Title & Escrow Co., 797 F.2d 1037 (D.C. Cir. 1986), which had found that the RESPA statute of limitations was jurisdictional. The reasoning in Ramadan is on point for RESPA, and courts within our circuit have accordingly reasoned that RESPA's statute of limitations may be equitably tolled. See, e.g., Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009); Marple v. Countrywide Fin. Corp., No. 07-4402, 2008 U.S. Dist. LEXIS 37705, at *14 (D.N.J. May 7, 2008).

In Marple, 2008 U.S. Dist. LEXIS 37705, the District Court of New Jersey addressed whether equitable tolling had been adequately pleaded in a RESPA case and found that it had. In that case, the plaintiff alleged that defendant mortgage lenders "illegally marked up the charges for services performed in connection with the closing on her residential mortgage loan." Marple, 2008 U.S. Dist. LEXIS 37705, at *1. Specifically, these charges were $73 for "Tax Service Fee to Countrywide Home Loans, Inc." and $25 "Flood Certification to Countrywide Home Loans, Inc." Id. Plaintiff alleged that those services were not

-10-

actually performed by Countrywide Home Loans, Inc., but rather by a third party, which charged less than what was listed with the remainder going to Countrywide Home Loans, Inc. as a kickback. Id. Although the plaintiff filed her suit over a year after the closing date of the mortgage loan, the court held that she adequately pleaded equitable tolling since she alleged that the mortgage documents affirmatively misled her that the full amounts listed were going towards services when in fact some were a kickback. Id. at *14-15. We are facing a similar situation here.

In the First Amended Complaint, plaintiffs include a section claiming that their allegations warrant equitable tolling of RESPA's statute of limitations. Their allegations include the following:

> Plaintiffs and members of the putative class could not, despite the exercise of due diligence, have discovered the underlying basis for their claims. Further, Defendants knowingly and actively concealed the basis for Plaintiffs' claims by engaging in a scheme that was, by its very nature and purposeful design, self-concealing.
> ...
> Plaintiffs' and the putative Class members' "purported" delay was excusable because they did not discover, and reasonably could not have discovered, Defendants' conduct as alleged herein absent specialized knowledge and/or assistance of counsel.
> ...
> First Horizon used its form mortgage documents, disclosures of affiliated business arrangements, and the entire artifice of a seemingly legitimate business arrangement, to affirmatively mislead Class members about the relationship between the reinsurer, FT Reinsurance, and the lender, First Tennessee

-11-

> Bank and/or First Horizon Home Loans, and to
> represent that, rather than a kickback or
> unearned fee, any payments exchanged between
> the affiliated businesses, or given to them
> from the Private Mortgage Insurer Defendants
> through referral, were for actual services
> rendered.
> ...
> Putative Class members exercised due
> diligence by fully participating in their
> loan transactions.

These allegations sufficiently plead equitable tolling at this stage of the litigation. The defendants have argued that the plaintiffs failed to allege that they were affirmatively misled by the defendants or that they performed due diligence. However, similarly to the situation of Marple, plaintiffs aver that First Horizon used its mortgage documents affirmatively to mislead them that the relationship between them, the insurers, and FT Reinsurance was for actual services instead of kickbacks and unearned fees. Defendants contend that this is insufficient because failing to disclose in the terms of the reinsurance arrangement that those terms violate RESPA is not an act of concealment that can support equitable tolling. We are not persuaded. Plaintiffs are not averring that defendants simply failed to disclose the alleged kickbacks. Rather, they plead that the defendants affirmatively misled them by "represent[ing] that, rather than a kickback or unearned fee, any payments exchanged ... were for actual services rendered." Allegations of misleading mortgage documents are sufficient to allege equitable tolling in a RESPA case. Marple, 2008 U.S. Dist. LEXIS 37705, at *14-15. Accordingly, the plaintiffs have adequately pleaded

equitable tolling at this stage of the litigation.  Whether they can avoid the bar of the statute of limitations must await another day.

V.

The remaining defendants also seek dismissal of plaintiffs' unjust enrichment claim.  To sustain a claim of unjust enrichment, otherwise known as "quasi-contract" or "implied-in-law contract," plaintiffs must show that the defendants "either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (citing Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).  To recover under the equitable doctrine of unjust enrichment, a plaintiff must establish the following:  "'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'"  Wiernik v. PHH U.S. Mortg. Corp., 736 A.2d 616, 622 (Pa. Super. Ct. 1999) (quoting Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), aff'd per curiam, 535 Pa. 610, 637 A.2d 276 (Pa. 1994)).

"Under Pennsylvania law, 'the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract.'"  Hershey, 828 F.2d at 999

(quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)).  The "express contract," however, must be "on the same subject" as the unjust enrichment claim for the unjust enrichment claim to be barred.  Berger v. Zeghibe, 465 F. App'x 174, 185 (3d Cir. 2012) (quoting Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1230 (3d Cir. 1987)).  For example, unjust enrichment claims proceed in construction cases where the claim is that work was completed, but not compensated for, beyond the scope of the contract.  See HCB Contrs. v. Rouse & Assocs., No. 91-5350, 1992 U.S. Dist. LEXIS 9916, 25-26 (E.D. Pa. July 13, 1992).

Here, plaintiffs have an express mortgage contract with the defendants, but at this early stage of the litigation we are not able to determine whether this contract is on the same subject as their lawsuit.  The plaintiffs contend that they are not suing the defendants for breach of contract but rather under RESPA.  Accordingly, they argue, their mortgage documents do not provide any remedy for the alleged violations and accordingly do not prohibit the plaintiffs from stating a claim for unjust enrichment.  Any decision on whether plaintiffs have viable unjust enrichment claims must await further developments in the action.  In addition, for the reasons discussed above with regard to the RESPA claim, we will also not dismiss the unjust enrichment claims as being time-barred.

VI.

In sum, we will grant the motion of Genworth, Republic, and Radian to dismiss under Rule 12(b)(1) for lack of standing. We will deny the motion of FHNC, First Tennessee Bank, First Horizon Home Loan Corporation First Horizon Home Loan, and FT Reinsurance to dismiss under Rule 12(b)(6). As for the motion of United Guaranty, we will deny it as to plaintiff Broome, but grant it as to plaintiff Barlee.